Circuit is now in session. All persons having business before this honorable court may now draw near and they will be heard. God save the United States and this honorable court. Very well, good afternoon gentlemen. Thank you for appearing by video conference for this argument session. Madam Clerk, would you please call the case for argument? 20-1616 from the Southern District Court. This is Bert Bandstra. Very well, Mr. McCarthy, we'll hear from you first. Thank you, Judge. May it please the court. Good afternoon, gentlemen. My name is Tim McCarthy. I practice law in West Des Moines, Iowa and I have the opportunity to represent Bert Bandstra on this appeal. I was actually his trial court attorney back in October 2019. Mr. Bandstra was elected to go to trial. It was a short trial. It was a day and three quarters long. And he ultimately got convicted of the only count he was involved with, which was conspiracy distributed methamphetamine, in excess of 500 grams. He was sentenced to 190 months. Sometime later, the district court found the base offense level would be 34, gave him a two-point increase for a firearm, 36, crimp history two, guideline range was 210 to 262, and the court ultimately gave him a sentence of 190. He had three co-defendants, Amber Jo Bonewits, Troy Clark, and Christian Zimmerman. Bonewits was sentenced before Bandstra. She received 150 months. Zimmerman was sentenced after. He received 121 months. How this organization worked, your honors, is Clark was pretty much the main guy. Bonewits and Zimmerman bought meth from him, and we're talking large quantities, kilos, pound quantities, and then Mr. Bandstra would purchase ounce quantities once a week from both Bonewits and Zimmerman, and when the feds, law enforcement, were following up on Bonewits and Zimmerman, they got Mr. Bandstra in their sights and issued a search warrant and so forth. The first issue I'd like to address is the firearm enhancement. This was not a 924C case. We had an agreement that there was not going to be any mention of the gun during the course of the trial, and there's some reasons for that, so I agreed to it because it was in our best interest not to mention the gun. So no evidence came in whatsoever. Zero evidence came in a trial concerning the weapon. At sentencing, the prosecutor introduced two photos of a weapon purportedly to be Mr. Bandstra's, was purportedly to be at, it was in his bedroom, but then again there was no sentencing, there's no evidence at either the trial or at the sentencing procedure, just a photograph. We had no opportunity to cross any law enforcement to confront the government witnesses, just two photos, and to find that that gun was somehow connected to the drug activity is a huge guess. Where was it found? Was it moved? Who found it? All those things were not answered, and for it to tie the gun in and give him a two-point enhancement, I think was an error without any evidence whatsoever. There wasn't even a proffer from the assistant U.S. attorney on it, just two photos. And that ties into the safety valve argument because once he was given a two-point enhancement for the firearm, he wasn't eligible, so I couldn't even ask for that at that point. To answer the question, I'm going to propose a question, really how was the gun connected? And to answer that question based on the record in this case, you have to guess. You've got to make some presumptions that aren't based in fact or evidence, and I don't think that's what the law calls for. We don't even know where the gun was found. We don't know when it was found, who found it, was it moved before these pictures were taken, or was it moved afterwards? I don't know, but we're asking that that two-point enhancement be reversed. Can you say, Mr. McCarthy, just to be precise on the terminology, you're talking in terms of points. Criminal history score is determined based on points, but I think what you mean is a two-level increase in his offense level? Is that the dispute here? That is correct, your honor, from 34 to 36, yes. Okay, so we're talking levels, not points is my thought. Yeah, yeah, you're correct. I misspoke. Very well, you may proceed. Thank you. Concerning the minor participant, 3B1.2B of the guidelines, it's our position that Baxter was substantially less culpable than Zimmerman and Bonewits. Zimmerman had six controlled buys conducted on him, six. He was buying and selling pounds and kilos all over north central Iowa. Bonewits was also buying and selling pounds and kilos of methamphetamine. Baxter, on the other hand, received one ounce per week, which he sold part of, to feed his habit and his addiction and pay for the drugs. You know, he gets an ounce, he sells half of it, recoups the profit, and drugs are free for him. It's a sad state of events, but that's what happened here. Baxter was an admitted customer of Zimmerman and Bonewits. He had nothing to do, he never met Troy Clark. He had no idea where they got it from, how they got it, what they paid for it. They just delivered him an ounce every week, and he turned around and sold part of it and did the rest. The PSI and the prosecutors both will admit that Baxter had no leadership role whatsoever, and also was just a mere customer of Bonewits and Baxter. If you look at the PSR, and I mentioned Zimmerman, 71, Clark, 65, and Baxter, 27. That's how many times he's mentioned, and you have to realize this was a six-count indictment, and he was only charged in count one. That leads me to what would be the third issue on this appeal, and that's what I've termed the Mr. Baxter. Even though while she was on release, she was found to have drugs in her person, smuggling into the Polk County Jail. She also had an issue with a gun, that the prosecutor used the term, I'm going to give her the benefit of the doubt and not pursue that. Zimmerman, who was moving kilos, pled guilty after Baxter was found guilty, and he received a $121,000 fine. That's going back to what Baxter got, he got $190,000, and we have the same district court judge in all the cases, so the court is ultimately familiar with this case. I guess what it really comes down to is doing criminal defense work in both state and federal court. At some point, especially in federal court, you have what's called the talk with your client, and the talk is you bring your client in, say, okay, here's the plea agreement, you do the guideline calculations, you say this is what you're looking at on a plea agreement, maybe it's 111C, maybe not, but you talk to them about what advantages there are to taking a plea, and you always say, well, what if you go to trial? The common answer for me and my colleagues is if you go to trial and win, great. If you go to trial and lose, you're going to get hammered, and that's what happened here. The sentences, $150,000, $121,000, up to $190,000 are not in line, and you shouldn't be punished because you go to trial. That's my bottom line. It's a constitutional right, and I know we all know you lose your three points for acceptance, and you probably get hit with obstruction if you testify and lose, but it should be in line with the rest of them. With that, I'm going to yield the rest of my time for rebuttal. Very well. You may. Thank you for your time. I need just one moment here. All right. Very well. Mr. Call, we'll hear from you. If it pleases the court, Mr. McCarthy, I will address the three sentencing issues as well, starting with the gun enhancement. There is evidence as to the location of the gun, starting with paragraph 33 of the pre-sentence report. The paragraph the defendant admitted to that the loaded Ruger .357 revolver was located in his bedroom together with several other items relating to the drug distribution, including currency, baggies, methamphetamine residue, digital scales, and packaging materials. The photograph that was offered is a series, sentencing exhibit three is a series of three photographs. The first photograph is the photograph of how the firearm was observed at the time of the search warrant in a case underneath an end table, and then the second and third are essentially staged photographs showing the firearm in more detail. Who laid the foundation for the photograph so that we would be able to confirm what you just said about what's shown in each photograph? The photograph was simply offered without objection at the sentencing hearing, but as the photographs in the trial exhibits, I would point to trial exhibits 9, 12, and 18, where wider views of that same end table appear. The end table that has the digital scales on it, it has a tin containing some currency right next to it, so it was based on the trial record. This photograph clearly was the firearm in its case on this end table next to Mr. Banser's bed. In any case, there's no objection to the allegation that it was contained in his bedroom. At the law and the temporal and spatial relationship between the defendant, the criminal activity, and the firearm, we find that it is not clearly improbable that the firearm had nothing to do with the offense. It's a tool of the drug trafficking trade. That's something this court has mentioned in the Anderson case, for example, and other cases as well. This is not an unloaded hunting rifle in a closet. This is a loaded handgun contained near other indicia of drug trafficking. It was a firearm the defendant had in that residence during the course of the prosecution with respect to his activities with Ms. Bonowitz and Mr. Zimmerman, as well as with his own customers. Regarding the role adjustment, Mr. McCarthy's argument or the extension of the argument is there would almost always be a role reduction if there's an upstream supplier of some sort, and that simply is not the law. We cite the Cubille case at page nine of our brief as an example. The defendant was deeply involved in the offense. He had his own customer base. He had his own customer base where he set the prices. He collected the money. He dealt with it independently of Zimmerman and Bonowitz. So, for those reasons, the enhancement or the minor participant reduction would not apply. If anything, I would suggest that he risked a role enhancement because, as the district court mentioned, he used his girlfriend, Stacey Johnson, to receive money on his behalf to provide information or transmit information between customers and himself, between Bonowitz and Zimmerman and himself. So, not only is he not getting this report properly, not minimal participant reduction, but, frankly, he probably got a little bit of a break by not getting a role enhancement. As to the sentencing disparities, and I'll focus in particular on the argument made in the brief with respect to the disparity between Ms. Bonowitz and Mr. Banstrup, Ms. Bonowitz was held accountable for the same range of drug quantity as was Mr. Banstrup. She did not get a firearm enhancement and she was denied acceptance responsibility for smuggling methamphetamine into the Polk County Jail. She was in the same criminal history category. She received a similar variance in terms of percentage. The difference between Ms. Bonowitz and Mr. Banstrup comes down to the firearm. The firearm, Mr. McCarthy mentioned, the firearm that had initially been attributed to Ms. Bonowitz in her pre-sentence report, that was a firearm that was found at a search warrant of Mr. Clark's residence, where Ms. Bonowitz was present. Entirely different circumstances. It was under a pile of clothes. There was an initial suggestion that she might be tagged with the gun, but the facts just didn't bear that out, and that's discussed in paragraphs 41 through 44, generally, of Mr. Banstrup's pre-sentence report, the circumstances involving that gun. Moreover, this court and Frye and Pierre, for example, as cited on page 12 of our brief, has made clear that we're really not supposed to be doing comparisons between individual defendants or co-defendants in a conspiracy case, but rather looking to national disparities. There is no showing of that sort of disparity here. Focusing again on Mr. Banstrup's sentence, he received a sentence below the guideline range. A guideline sentence would have been presumed reasonable on appeal. There is no procedural error. There is no abuse of discretion by the court. Unless this court has further questions, I would be content to rely on the brief for the remainder of the arguments. I was struck by Mr. McCarthy's brief and opening argument. One almost gets the impression that he characterized his client as, like they say in the movie industry, playing only a bit role or a cameo role, and you have him on being involved hip and thigh in the whole distribution system. Where does the truth lie? To what extent did he participate in the overall distribution of the other defendants? He was a distributor of methamphetamine that was provided by Vonowitz and Zimmerman, and of course their source was Clark. They were certainly pound quantity dealers. He was an ounce level dealer. There certainly is a distinction about the quantities that were being dealt. On the other hand, he was distributing this in, as the district court noted, sentencing, I believe, small rural communities where this stuff has a particularly pernicious effect. He was carrying around, not carrying around, he was in possession of a firearm while he was engaged in this drug trafficking activity. Over time, he moved a substantial amount of methamphetamine that, along with the way the guideline worked, put him at that level 34. That was not objected to in the pre-trial report process. Thank you. If there are no further questions, we'd ask that the sentence be affirmed. Very well. Thank you for your argument. Mr. McCarthy, we'll hear from you in rebuttal. Thank you, Judge. The court asked about the foundations for the photographs. There were none. There was no evidence put on. I wasn't afforded an opportunity to cross-examine anybody or confront the witnesses that led to this increase. There was no foundation. What about the idea that the judge could see that the photo showed the same area that was shown in the trial exhibits? I think that was the answer given. The question is, when were those photos taken and what was placed where? I don't know. That's a guess. To put it a little bit in perspective, when Amber Jo Bonewentz came in for sentencing with the same criminal history and the same base level, they recommended a sentence of 168 months for her. She got 150. Then when my client appears, Mr. Banstrap, they recommended 210, the low end of the guidelines for him. There's just a huge discrepancy there. Again, he was doing one ounce a week and she was doing pounds and kilos. You got to believe that they're angry at him for going to trial. It wasn't that onerous of a trial. It was a day and a half, eight and three quarters. With that, your honors, I appreciate the opportunity to appear before you. I'll rely on the appellant's first brief and the reply brief as written. Thank you. Very well. Thank you both for your arguments. The case is submitted. The court will file an opinion in due course. That concludes the argument session for this afternoon. The court will be in recess until further call at the docket. Good afternoon, everybody.